MORENO *v.* MARTÍNEZ.

APPEAL from the District Court of Mayagüez.

No. 19.—Decided November 23, 1904.

CONFUSION OF RIGHTS—CREDITOR AND DEBTOR—DEBT EXTINGUISHED.—One of the causes for the extinction of obligations is *confusion,* which occurs when one and the same person becomes the debtor and creditor.

ID.—NOTICE OF ATTACHMENT—ADJUDICATION—UNLAWFUL DETAINER.—Where a cautionary notice of attachment has been entered in the registry of property

subsequently to a mortgage which becomes extinguished by *confusion,* the attached property is affected by the liabilities secured by the attachment, and where the attached property is awarded to the execution creditor, such award constitutes a sufficient title upon which successfully to prosecute an action of unlawful detainer against the person in possession of the real estate.

The facts are stated in the opinion.

*Mr. Victor P. Martínez,* for appellant.

*Mr. Ramírez Arrillaga,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is an action of unlawful detainer. A tract of land containing 54 acres was the property of J. J. Moreno, brother of the plaintiff, who mortgaged it to the defendant for a certain sum. He afterwards became indebted to the plaintiff in the sum of $2,000 and gave notes for it. The plaintiff attached the farm, and registered her attachment, and notified defendant. Afterwards J. J. Moreno sold the farm to defendant in payment of the mortgage debt and another unsecured debt. Plaintiff proceeded with the foreclosure of the attachment, and on third sale the farm was struck off to her for debt and interest and costs. After several unsuccessful motions and suits by Martínez, Mrs. Moreno brought this action of unlawful detainer, stating the facts. Martínez answered, making an effort to foreclose his mortgage or to reinstate the case as it stood before the attachment proceedings began.

On an oral trial the court by a unanimous decision, after reciting the facts, draws conclusions of law to the following effect:

First. That according to article 1562 of the Code of Civil Procedure the plaintiff could maintain this action of unlawful detainer.

Second. That this action can be brought against any person in possession after one month's notice under article 1563, paragraph 3, of Code of Civil Procedure.

Third. That the *confusion* of title causes the extinction of an obligation by uniting in one person the two titles of debtor

and creditor; and in the present case the mortgage delivered upon the farm in controversy by Señor Moreno in favor of Sr. Martínez became cancelled by *confusion,* leaving in force the subsequent charges and incumbrances.

Fourth. That Martínez's mortgage having been once cancelled, he lost the privileges of his credit, and the attachment remained in force against the farm conveyed by Joaquín J. Moreno to his creditor Victor Martínez.

Fifth. That following all the proceedings of foreclosure instituted by Doña María Moreno against Joaquín J. Moreno, and the giving to her, after adjudication, possession of the farm attached, the plaintiff acquired the right and title of owner to eject the mortgagee, who by not moving out for a month and not having any other title to the property must be considered as a tenant at sufferance. (See decisions of the Supreme Court of Spain dated 16th November, 1885, and 30th June, 1887.)

Sixth. That if it is true that one in possession in the capacity of an owner has in his favor the legal presumptions that he has possession under a good title and is not obliged to show it; this precept is not applicable to the case at bar, inasmuch as in this case there is no question of title to the property and that the right of the plaintiff by which the defendant is dispossessed has nothing to do with that title.

The court accordingly rendered judgment in favor of the plaintiff and decreed that the defendant within twenty days should vacate the property, and if he should so fail to vacate the same he should be forcibly ejected therefrom, with the imposition of the costs of the proceedings.

From this judgment the defendant took an appeal to this court, and both parties appeared herein by their attorneys on the 7th of October, and argued the case orally and filed their written arguments, which are made a part of the record herein. The attorney for the appellant makes the following

points, referring to the authorities as hereinafter stated, that is to say:

A. He contends that this court is a court of appeals and not of cassation, and is not limited in its deliberations and judgments on all subjects only to the infractions of the law or breach of form as they have been pointed out by the litigants, but that it may take into consideration all the facts and proceedings in the cause as they appear in the record, considering each according to its merits, for the better administration of justice and right, and the avoidance of injustice and delay. In support of this proposition, he refers to the law of the Legislative Assembly approved on the 12th of March, 1903.

B. He states that there are presented in this case several points of law and of fact which fall within the letter and the spirit of the law governing appeals, and recites the following facts:

C. By a writing delivered on December 4, 1890, Joaquín Moreno mortgaged the property described in favor of Victor Martínez, and by writing of adjudication dated February 1, 1900, and inscribed in the registry of property, Joaquín Moreno, in payment of the mortgage and interest, delivered the said *finca* to Victor Martínez, counsel's father, without the latter having delivered to the said Joaquín Moreno any cancellation, receipt, or acquittance whatsoever, nor giving express consent, as appears from said writing. He states that the plaintiff and the trial court in the judgment from which this appeal is taken, claim that by virtue of the above writing the mortgage was cancelled by *confusion*. He states that here lie the most important points of the suit. He defines the word *confusion* as disorder, etc., citing page 207 of the dictionary of the Spanish language, and states that the word has been incorrectly used in the judgment.

D. He states that obligations may be *extinguished* by confusion of the rights of the debtor and creditor, and cites

article 1124 of the Civil Code in support of this statement; that a debt may not be considered *paid* until the thing is completely delivered, or presentation made of the matter in which the obligation exists, citing article 1125 of the Civil Code; also article 1138 of the same code; that Joaquín J. Moreno agreed to pay money, and that he has not done so, and that after reading these articles there can be no doubt that the mortgage debt was not paid, and consequently the same could not be cancelled.

E. He states that Joaquín Moreno received from Victor Martínez a certain amount of money to be paid with interest on a certain date, which continued to run on until the date of the said writing of adjudication; that he delivered the farms because the credit amounted to more than the value of of the same, and did not pay the money, wherefore Martínez could not give him an acquittance or cancellation of the mortgage. It is according to law and justice that Moreno not having paid the money, but instead properties, and a debt not being *extinguished* until the same is *paid* in full, the same cannot be considered as *satisfied,* and therefore the debt and the mortgage still exist. This position he claims to be justified under the precepts of the Civil Code.

F. He argues that if the same question is considered under the Mortgage Law, the same conclusion is reached, or that the debt and the mortgage both still exist; the latter not having been cancelled.

He cites from the Mortgage Law the following:

"Article 82. Inscriptions, by virtue of public writings, may not be cancelled except with the express consent of the parties."

"149. Inscriptions of mortgages can be cancelled only in the manner indicated in Article 82."

He states that in accordance with the above the express consent of the mortgagee was necessary to the cancellation of the mortgage, and the same not having given such consent

the mortgage could not be cancelled; citing decisions of the Registrar of Property of Madrid: February 5, 1896, and May 5, 1896: R. of J. 1894 to 1897, folios 64 and 65.

G. Moreover, Mrs. Moreno, and the judgment of the court below, show that her execution by which the farm was adjudicated to her in view of her credit was of a later date than the mortgage of Martínez. Citing article 44 of the Mortgage Law, he continues and says that Joaquín Moreno mortgaged the property, on December 4, 1890, to Martínez, and Mrs. Moreno entered her attachment in the registry of property on March 30, 1898, the mortgage being executed seven years prior to the said entry, and therefore under the article cited above it cannot prejudice the mortgage; citing judgments of the Supreme Court of Madrid of February 1, 1896, and October 28, 1895.

H. He contends that the attachment and its entry in the registry of property as aforesaid should not be taken into consideration in connection with the farms mortgaged to Martínez; citing article 125 of the Mortgage Law, in connection with paragraph 2 of article 79, which says that a cancellation may be had when the right inscribed is completely extinguished. He cites article 167 of the Mortgage Law in support thereof, and says that the same is confirmed by decisions of the Supreme Court of Spain, under date of February 1, 1876, and February 28, 1888, etc. All of which, he says, agree with article 33 of the Mortgage Law.

I. He contends that in view of the fact that the debt has not been satisfied, and that the mortgage could not be cancelled, the inscription of the attachment of Mrs. Moreno cannot be taken into consideration, and that the only valid title to the property is held by Víctor Martínez.

J. He then takes up the question of the actual possession of the property, stating that Martínez is in possession and claims to be the legitimate owner of the same, quoting parts of the orders and decrees of the court below, quoting also

article 443 of the Civil Code, which provides that in no case can possession be taken forcibly, while there is a party in possession already who possesses the same. Citing article 433 of the Civil Code in regard to possession.

K. Counsel continues and says that Doña María Moreno has not been able to acquire the possession of said estates, because possession is a voluntary act, that the same cannot be had by the exercise of force. But supposing, says counsel, that Doña María Moreno had taken possession the same as Víctor Martínez, as possession cannot be recognized in two different parties of the same property, the actual possessor would have to be given preference, the actual possessor in this case being Victor Martínez. Furthermore, the act of possession of Mrs. Moreno is dated May 6, 1902, while that of Martínez is of February 1, 1900, the latter thus having also in his favor the fact of a longer possession. Counsel cites article 445 of the former Civil Code, and quotes article 447 of the present Civil Code in support of his argument.

L. Mrs. Moreno, and with her the judgment of the court below, from which this appeal is taken, state that Martínez possesses said farm "precariously," which counsel claims is a serious error. Precario, he says, as defined by the dictionary of the Spanish language, is a thing held as a loan, and with the consent of its owner. He quotes Sr. Manresa in his commentaries on Civil Procedure.

M. Counsel declares that it requires very little effort to demonstrate to the court that Víctor Martínez does not occupy the said lands en precario. He continues and says that Mrs. Moreno cannot prove that Víctor Martínez is in possession of the property by sufferance without payment of revenue, or in a way of a gratuitous loan; but, on the contrary, that Víctor Martínez has proved beyond a doubt that he is the legitimate owner by virtue of a title executed by Joaquín Moreno.

N. Counsel states that the trial court gives in support

of its action the sentences of the Supreme Court of Spain of November 16, 1885, and June 30, 1887, but asserts that these are not applicable to the present case, the first because it refers to an ejectment by a creditor, while in the present case the defendant is neither creditor nor debtor; and the latter refers to the possessor of a property *en precario*.

O. In conclusion, counsel refers to several judgments of the Supreme Court of Spain, among others that of April 28, 1892, and of January 4, 1900; and further states:

P. That the plaintiff is not in possession of the farm in question; that the real owner and person in possession is his client; that his client does not hold said property *en precario,* but by virtue of a legitimate title; that in view of all that has been said the judgment from which this appeal is taken should be reversed, and the costs and damages taxed against the opposing party.

The attorney for the appellee concisely makes the following points of law and of fact:

First. In the suit which Mrs. Moreno brought against Don Joaquín Moreno an attachment was made on a landed estate, which he afterwards sold to Don Victor Martínez, and he being required to pay the amount of the attachment, and having failed to do this, the property was put up at auction, and there being no bidders, the same was adjudged to Mrs. Moreno for the amount claimed, interest and costs.

Second. Possession was granted Mrs. Moreno upon request, by the Municipal Court of San Sebastián, acting for the District Court of Mayagüez, but notwithstanding this, Victor Martínez did not vacate the property, and continued to benefit by the crops of coffee, as if he had been the owner, which he was not, because the dominion inscription was cancelled in the registry of property.

Third. Matters being thus, and in view of the temerity of Victor Martínez in not vacating the property, he was required so to do, and given the term of one month in which

to vacate, as he was in possession of the same *en precario,* and without paying any revenue or rent whatever, and as upon the expiration of one month he did not vacate, Mrs. Moreno entered this suit of unlawful detainer, which he has stubbornly resisted.

Fourth. There has been brought to the record, as evidence, an authentic copy of the attachment of the property, of the entry of said attachment in the registry of property, the requirement made of Victor Martínez to pay the amount of the entry of the adjudication of the *finca* to Mrs. Moreno and of the cancellation of the inscription of dominion of Victor Martínez, and of the inscription of the farm which was made in favor of Mrs. Moreno.

Fifth. Wishing especially to call the attention of this Honorable Court to the fact that Victor Martínez presented in the record, as evidence, the title of the farm inscribed in his favor in the registry of property, but that inscription is the same one that was cancelled by order of the District Court of Mayagüez, and therefore such inscription in his name does not exist, and it does exist in the name of Mrs. Moreno.

Sixth. A party in the position of Victor Martínez is understood to be the possessor *á precario,* in accordance with the decisions of the Supreme Court of Spain, and also of this Honorable Court; and therefore the court should affirm the judgment of the District Court of Mayagüez, with the costs against the appellant.

*Facts.*—1. José Joaquín Moreno executed a voluntary mortgage in favor of Victor Martínez, to guarantee a certain sum of money which he owed on the following property: A piece of land planted in coffee, cane and pastures; 54.47 *cuerdas,* equivalent to 21 hectares, 40 ares and 80 centiares, and situate in the Guatemala ward, municipal jurisdiction of San Sebastián, being bounded on the north by lands belonging to José Santos Hernández and Práxedes Serrano; on the east, by lands belonging to Doña Rita and María Mo-

reno y Cebollero; on the south by lands belonging to Manuel
Antonio Giménez y Monserrate Cebollero, and on the west
by those of José Santos Hernández, including two-thirds of
the residence and establishments, which mortgage was in-
scribed in the Registry of Property of Aguadilla.

2. On a later date Mrs. María Moreno sued José Joaquín
Moreno for the collection of a debt of $2,000, provincial
money, interest and costs, having attached the described prop-
erty, which attachment was entered in the Registry of Prop-
erty of Aguadilla.

3. After the entry of the attachment, by a writing before
the notary, Don Mariano Riera Palmer, on February 1, 1900,
José Joaquín Moreno sold, and gave in payment to Victor
Martínez the mortgaged property in payment of his mortgage
credit, and of another one unsecured, and for which reason the
said mortgage was cancelled by *confusion,* and the only charge
against the same remaining was the aforementioned attach-
ment.

4. Victor Martínez as purchaser of the property being no-
tified, and article 71 of the Mortgage Law thus being complied
with, that the said property would be sold at auction, in order
that he might preserve the same within the term of ten days
by paying the amount of the *anotación,* he prayed for the re-
establishment of the order of August 13, 1900, which decreed
that requirement, and after due procedure this was denied him
by order of September 30th of the same year, which was final.

5. And Victor Martínez not having restored the property,
the proceeding continued and after three auctions it was ad-
judged to Mrs. María Moreno for principal, interest and costs,
by order of November 12, 1902, requiring Victor Martínez to
recognize Mrs. Moreno as the possessor and by order of May
1, 1902, the inscription of dominion was ordered to be can-
celled.

6. Notwithstanding the judicial possession given to Mrs.
Moreno, Victor Martínez has continued in possession of the

farm, occupying the house through his agent Don Honorio Ziordia, two-thirds of which house, with two-thirds of the buildings, were auctioned off with the property, and adjudged to Mrs. Moreno.

7. Afterwards, Victor Martínez, after losing several suits involving this property, brought suit against José Joaquín Moreno and Mrs. María Moreno involving half of the writing of adjudication of February 1, 1900.

8. Victor Martínez was required, by the judge of the Municipal Court of Mayagüez, to vacate the property which he was occupying *en precario,* on December 1, 1902.

*Law.*—1. A property being adjudged to a party who is put in possession of the same, such property is transferred to the party.

2. All persons legally entitled to the possession of the estate either as owners, beneficiaries, or by virtue of another title which gives them the right to enjoy the estate, and their representatives, shall be considered legal parties to institute an action of unlawful detainer. (Art. 1562, Law of Civil Procedure.)

3. Actions of unlawful detainer may be brought against tenants at sufferance, or any other persons enjoying the estate, whether rural or urban, without paying rent therefor, provided that one month's notice to vacate has been served upon them. (Art. 1563, No. 3, Law of Civil Procedure).

4. According to decisions rendered by the Supreme Court of Spain, under date of February 16, 1885, and June 30, 1887, the act of adjudication of an estate determines the civil and real possession of the same, resting in the owner the right to the action of unlawful detainer against whoever may have it mortgaged, who, because of paying no rent and not holding another title, has the character of a tenant at sufferance, which decisions are applicable to the present case.

If the writing of adjudication of March 1, 1900, prayed for by Victor Martínez, is declared null and void, there will

exist more reasons than ever for the proceeding of unlawful detainer, as in such a case he would not have the title in his favor, as cited in his answer to the requirement made of him by the municipal court, which could not be brought forth in any other manner because of it being charged with nullity by himself, and because even if it were considered valid it would not serve his purpose, in view of the transfer of the property to Mrs. Moreno, because of Victor Martínez not having complied with the requirements of article 71 of the Mortgage Law, and thus giving cause for the auction sale of the farm and adjudication to Mrs. Moreno and judicial possession.

These are the arguments of the respective counsel stated substantially in their own words as they appear in the memorandum filed in the record. Let us briefly examine them.

The attorney for the appellant seems to mistake the legal meaning of the word " confusion," which, according to Bouvier's Law Dictionary, is defined to be " The merger of the qualities of debtor and creditor in the same person. The concurrence of two adverse rights to the same thing in one and the same person." (See 1 Bouvier, p. 396.) These definitions are taken from the civil law, and there can be no doubt that when the plaintiff purchased the property from his debtor and became the owner of it, his mortgage was merged in the ownership and was thus extinguished. It is true that it was not *paid* but was *extinguished* by the merger, and does not exist any more than if it had been paid, or than if it had never been executed. The mortgage having become extinguished, the plaintiff's attachment remained in full force, and became effective as to the property claimed by the defendant and occupied by him, and the court below accordingly decided that the plaintiff should vacate the property and yield the possession.

It appears from all the investigation made in the record, and from the briefs of counsel filed herein, and from the oral arguments presented in open court, that the judgment of the

court below is correct in every particular and should be affirmed.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández, Figueras and Wolf concurred.